**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Jorel Shophar, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 22 cv 02333 |
| v. ) | |
| ) | Judge Franklin U. Valderrama |
| Pathway Family Services, LLC, ) | |
| KVC Health System, Inc., KVC ) | |
| Niles, and Richard Klein, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Plaintiff Jorel Shophar (Shophar) brings this action against Defendants Pathway Family Services LLC (Pathway), KVC Health System, Inc. and KVC Niles (collectively KVC), and Richard Klein, asserting claims for defamation *per se*, defamation *per quod*, and intentional infliction of emotional distress. R. 112, Second Am. Compl. (SAC). Before the Court are Pathway and KVC's Motions to Dismiss the SAC. R. 117, Pathway Mot.; R. 119, KVC Mot. For the reasons that follow, the Motions are granted in part and denied in part.

**Background**[1]

By way of background, Shophar, proceeding *pro se*, filed a complaint against Pathway and KVC, as well as numerous other defendants. He then amended his complaint. Several of those defendants moved to dismiss the first amended complaint (FAC), which the Court granted, with leave to amend. Shophar, now represented, filed a SAC asserting claims for defamation *per se*, defamation *per quod*, and intentional infliction of emotional distress against Pathway, KVC, and Richard Klein.[2]

---

[1] In evaluating a motion to dismiss, the Court accepts as true all the well-pled facts in the SAC and draws all reasonable inferences in favor of Shophar. *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.,* 933 F.3d 806, 809 (7th Cir. 2019).

[2] Defendant Richard Klein has not appeared in the case to date, and his claims are not the subject of any pending motion.

In his SAC, Shophar alleges that from 2015 through 2022, Pathway and KVC, among other things, made knowingly false reports that Shophar abused his minor children and that his children were afraid of him. SAC ¶ 13. Shophar further alleges that KVC has his children under its control, and currently has them in an undisclosed location. *Id.* ¶ 14.

As to KVC, Shophar alleges that from September 2019 to December 2021, KVC sent numerous false statements about Shophar to several individuals stating that his children have PTSD due to him kidnapping them and domestic violence against the children and their mother; that he has physically abused his children, causing them trauma; and that he has a criminal record, among other statements. SAC ¶ 25. In September 2022, according to Shophar, KVC caused a false statement to be published in a Cook County, Illinois newspaper indicating that Shophar's children needed foster care. *Id.* ¶ 26.

As for Pathway, Shophar alleges that on or about February 2022, Pathway spoke with Lincoln Grade School in Illinois, about Shophar, and sent numerous documents as well. SAC ¶ 17. Those communications, according to Shophar, falsely stated that the placement of Shophar's child at its psychiatric treatment facility was the result of a mental health services provider determination that Shophar was physically abusive to the child. *Id.* ¶ 18.

In the Motions, Pathway and KVC assert several bases for dismissal. Beginning with Pathway, those arguments include: (i) lack of personal jurisdiction under Rule 12(b)(2), (ii) improper venue under Rule 12(b)(3), and (iii) failure to state a claim under Rule 12(b)(6), arguing that the claims do not relate back to the FAC and are time-barred, and that Shophar has failed to plead sufficient facts to bring his claims against Pathway.

KVC makes similar arguments. Specifically, KVC argues: (i) lack of personal jurisdiction under Rule 12(b)(2); (ii) improper venue under Rule 12(b)(3); (iii) lack of subject matter jurisdiction under Rule 12(b)(1), including that the claims are barred by the Rooker-Feldman doctrine or the domestic-relations exception; and (iv) failure to state a claim under Rule 12(b)(6), arguing both that the claims are time-barred and that the claims fail as a matter of law, and absolute and/or qualified immunity. Pathway and KVC's Motions under Rule 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6) are before the Court.

## Legal Standard

The Court begins with analysis of its subject matter jurisdiction, because if the Court lacks subject matter jurisdiction, then it must go no further and dismiss the

lawsuit. *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) (cleaned up).[3] If the Court finds it has subject matter jurisdiction, it must next determine whether it has personal jurisdiction over Pathway and KVC, since "[p]ersonal jurisdiction is the power to adjudicate" a matter. *Siswanto v. Airbus*, 153 F. Supp. 3d 1024, 1031 (N.D. Ill. 2015). Without personal jurisdiction, the Court cannot adjudicate a matter. *Id.*

## Analysis

Curiously, KVC does not begin with its argument that the Court lacks subject-matter jurisdiction over Shophar's SAC, instead beginning with personal jurisdiction arguments. And Pathway does not make any subject matter jurisdiction argument at all. However, as detailed above, the Court must satisfy itself that it has subject-matter jurisdiction, and begins with the subject-matter jurisdiction analysis before proceeding to address the personal jurisdiction arguments, followed by the venue and failure to state a claim arguments of the parties.

### I. Subject Matter Jurisdiction

A Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Standing is an "essential component of Article III's case-or-controversy requirement," and the plaintiff "bears the burden of establishing standing . . . in the same way as any other matter on which the plaintiff bears the burden of proof . . . ." *Apex Digital, Inc. v. Sears Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). To survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). When deciding a facial challenge to subject matter jurisdiction—that is, when the defendant argues that the plaintiff's *allegations* as to jurisdiction are inadequate—"the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). But district courts may also "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether *in fact* subject matter jurisdiction exists." *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017) (citing *Apex Digital*, 572 F.3d at 444). In that case, "no presumptive truthfulness attaches to plaintiff's allegations," and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Apex Digital*, 572 F.3d at 444 (cleaned up).

KVC argues that the *Rooker-Feldman* doctrine divests the Court of subject-matter jurisdiction. Alternatively, asserts KVC, the domestic relations exception divests the Court of subject-matter jurisdiction.

---

[3] *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

### a. *Rooker-Feldman* Doctrine

KVC is a child welfare agency. Shophar has brought numerous lawsuits against various defendants relating to child custody proceedings originating in Kansas. *See* R. 105, 3/24/2023 Order at 2–3. According to KVC, the Kansas Child in Need of Care (CINC) court still has continuing jurisdiction over Shophar's children in ongoing child custody cases and asks the Court to take judicial notice of those cases. R. 133, KVC Reply at 3, n.1. The Court takes judicial notice of those cases in considering the Motions, and, in particular, the subject matter jurisdiction arguments. *See Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012) ("Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment."); *In re Lisse*, 905 F.3d 495, 496 (7th Cir. 2018) (noting that an order entered by a state court is a public record appropriate for judicial notice).

KVC contends that *Rooker-Feldman* deprives the Court of subject-matter jurisdiction as Shophar's SAC "clearly demonstrates that his root complaint against KVC continues to stem from the prior/ongoing state custody proceedings, including the purported reporting of defamatory information about the Plaintiff during and/or related to his children's CINC proceedings[.]" R. 120, KVC Memo. at 8. Therefore, reasons KVC, his claims are barred by the *Rooker-Feldman* doctrine, which precludes state court losers from seeking, in substance, appellate review of state court judgments in federal courts. *Id.* 7–8. KVC also contends that the claims in Shophar's SAC are "ancillary to the state court custody proceedings and are precisely the type of claim encompassed by the *Rooker-Feldman* doctrine." *Id.* at 8.

Predictably, Shophar disagrees, insisting that he is not seeking to have the Court review, nullify, or invalidate any state court order, and thus *Rooker-Feldman* is inapplicable. R. 125, Pl.'s KVC Resp. at 1–2. Shophar points out that nowhere in his complaint does he allege that the defamatory statements were made "during the custody proceedings," or how the statements are "related to the state custody proceedings." *Id.* at 2. Not only that, asserts Shophar, but it is unclear what the proceeding is, whether it is over, or whether any order or final judgment has been entered." *Id.* Shophar maintains that KVC fails "to provide any context here, or define 'CINC' proceedings,' or show how Shophar prevailing in this case against them would affect any state-court order or judgment." *Id.* Additionally, contends Shophar, the claims in this case are not ancillary to any state court proceedings, and that KVC has failed to show why a favorable verdict for Shophar would impact any state court proceeding. *Id.* at 2. Shophar also argues that the Court previously "acknowledged that it had subject matter jurisdiction over the defamation and intentional infliction of emotional distress claims." *Id.* (citing 3/24/2023 Order at 13).

In reply, KVC argues that Shophar now contends that the purported false statements made by KVC were not made during any custody proceeding. Reply at 2.

4

But this assertion, submits KVC, contradicts the crux of the allegations of Shophar's initial complaint, as well as his FAC. *Id.* True, the SAC, notes KVC, pleads different theories of liability against KVC, but the subject matter of Shophar's claims remain the same. *Id.* at 3. KVC fundamentally argues that *Rooker-Feldman* bars jurisdiction because the state court child custody proceeding is "inextricably intertwined" with the claims advanced by Shophar in the SAC. *Id.* at 2–3.

The *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Momo Enterprises, LLC v. Banco Pop. of N.A.*, 2017 WL 1178530, at *9 (N.D. Ill. Mar. 30, 2017), *aff'd sub nom. Momo Enterprises, LLC v. Pop. Bank*, 738 Fed. Appx. 886 (7th Cir. 2018) (unpublished) (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005)). In effect, lower federal courts—such as this one—are not vested with appellate authority over state courts. *Sykes v. Cook Cty Cir. Ct. Probate Div.*, 837 F.3d 736, 741 (7th Cir. 2016). Rather, "the Supreme Court of the United States is the only federal court that may review judgments entered by state courts in civil litigation." *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014). The rationale for the *Rooker-Feldman* doctrine is that "no matter how wrong a state court judgment may be under federal law, only the Supreme Court of the United States has jurisdiction to review it." *Sykes*, 837 F.3d at 742; *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012). The Court lacks subject matter jurisdiction over any claims which seek, at bottom, to set aside state court judgments.

While the doctrine applies to "[c]laims that directly seek to set aside a state court judgment" as "de facto appeals and are barred without additional inquiry," the doctrine has also been applied to those claims that are "inextricably intertwined" with a state court judgment. *Taylor v. Fed. Nat. Mortg. Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004), *as amended on denial of reh'g and reh'g en banc* (Aug. 3, 2004). In *Taylor*, the Seventh Circuit explained that "[w]hile 'inextricably intertwined' is a somewhat metaphysical concept, the 'crucial point is whether 'the district court is in essence being called upon to review the state-court decision.'" *Id.* at 533 (cleaned up). That inquiry involves whether the federal claim alleged injury caused by the state court judgment, or an independent prior injury the state court failed to remedy. *Id.* If the court determines a claim is inextricably intertwined (e.g. "it indirectly seeks to set aside a state court judgment") then the court must determine if the plaintiff had a reasonable opportunity to raise the issue in the state court proceedings; if there was an opportunity to raise the issue, the claim would be barred by *Rooker-Feldman*. *Id.*

The Seventh Circuit recently affirmed the narrowness of the *Rooker-Feldman* doctrine. *Gilbank v. Wood Cnty. Dept. of Human Services*, 2024 WL 3616798, at *1 (7th Cir. Aug. 1, 2024) (en banc). In *Gilbank*, the Seventh Circuit explained that the *Rooker-Feldman* doctrine "blocks federal jurisdiction when four elements are present. *First*, the federal plaintiff must have been a state-court loser. *Second*, the state-court

5

judgment must have been become final before the federal proceedings began. *Third*, the state-court judgment must have caused the alleged injury underlying the federal claim. *Fourth*, the claim must invite the federal district court to review and reject the state-court judgment." *Id.* at *6 (emphasis in original). The Seventh Circuit acknowledges one additional element that the Supreme Court has not had an opportunity to address, that the doctrine "does not apply to bar jurisdiction over a plaintiff's federal claim if she did not have a reasonable opportunity to raise her federal issue in the state courts." *Id.* In considering the application of the doctrine, the Seventh Circuit narrowed the focus to the relief sought by a plaintiff, e.g. "[i]f a plaintiff extends the invitation to undo, reverse, or overturn the state court judgment, *Rooker-Feldman* bars [his] case." *Id.* at *31 (Kirsch, J., concurring).[4] Thus, the Seventh Circuit has eliminated the "inextricably intertwined" language which gave a pathway to federal courts for plaintiffs that may not have been directly seeking to set aside a state court judgment. *Id.* at *1. The Court acknowledges that the briefing on the Motions was completed before this recent Seventh Circuit *Gilbank* opinion was issued, but identifies it for the parties as it is the controlling law in this circuit on *Rooker-Feldman*.

Before the Court analyzes the parties' respective arguments on *Rooker-Feldman*, as a preliminary matter, the Court clarifies that in its prior Order the Court stated that the Court had subject matter jurisdiction over the tort claims subject to the qualification that "[t]he Court has subject matter jurisdiction over these claims only to the extent [then plaintiffs] include allegations of injury independent of a state court judgment, and that such claims do not interfere with and/or disrupt ongoing local family law proceedings[.]" *See* 3/24/2023 Order, p. 13, n. 7. With that clarification out of the way, the Court turns to the SAC.

Shophar's SAC is sparse on details. In the SAC, Shophar alleges that KVC made numerous false statements about him including: placing the children with Shophar could not be in their best interest because of his history of abuse, history of noncompliance, and lack of contact; Shophar attempted to abscond with the children in May of 2017; and that Shophar committed domestic violence to the mother and physically abused his children, leading to the CINC referrals. SAC ¶ 25. In the SAC, Shophar alleges that "Judge Boyd (Cook County) has ruled that Illinois is the home state for Shophar's minor children (Case No. 19 D 079387, June 1, 2023 decision)." *Id.* ¶ 14. KVC, alleges Shophar, "has had those children under its control, and currently has them in an undisclosed location." *Id.* ¶ 14. On its face, it would appear that the SAC does implicate a state child custody proceeding and that the alleged defamatory statements were made in the course of such proceedings. But application of *Rooker-Feldman* requires more. Recall that the first element for application of *Rooker-Feldman* is a state court judgment. Indeed, that is the *sine qua non* of *Rooker-Feldman*. But nowhere in the SAC does it allege any state court judgment against

---

[4] As explained in the Seventh Circuit's en banc opinion, Part I of Judge Kirsch's opinion is an en banc majority opinion. *Id.* at *1.

6

Shophar, nor does KVC provide any evidence of such a judgment. While KVC submitted affidavits in support of its motion to dismiss based on lack of personal jurisdiction, the affidavits say nothing about the prior lawsuits or that the child custody proceedings resulted in a judgment against Shophar. *See* R. 120-1, Costabile Aff.; R. 120-2, Stucky Aff. To the contrary, KVC asks the Court to take judicial notice of *pending* child custody cases in Kansas. KVC Reply at 3, n.2. Although the Court can take judicial notice of Shophar's prior lawsuits, and pending child custody proceedings, the mere filing of lawsuits, or pendency of lawsuits, without more, does not suffice to invoke *Rooker-Feldman*.

Further, unfortunately for KVC, in *Gilbank*, the Seventh Circuit jettisoned the "inextricably intertwined" language, which according to the court, "has contributed to confusion in applying the *Rooker-Feldman* doctrine." *Gilbank*, 2024 WL 3616798, at *1. On that basis, the Court rejects KVC's arguments that the claims against KVC in Shophar's SAC violate *Rooker-Feldman* because they are "inextricably intertwined" with ongoing child custody proceedings. *See id.*

All in all, at this juncture, based on the allegations of the SAC, the SAC does not implicate the *Rooker-Feldman* doctrine. Therefore, the *Rooker-Feldman* doctrine does not divest the Court of subject-matter jurisdiction over KVC or Pathway.

### b. Domestic-Relations Exception Doctrine

The Court now turns to KVC's alternative argument on subject matter jurisdiction, that even if *Rooker-Feldman* doctrine is inapplicable, the domestic-relations exception to jurisdiction divests the Court of subject matter jurisdiction.

KVC argues that Shophar is asking the Court to review issues raised in the child custody proceedings in violation of the domestic-relations exception. Specifically, by asking the Court to consider and determine whether statements made by KVC in child custody proceedings were false. KVC Memo. at 8–9. KVC contends that this review would require the Court to analyze the CINC proceedings and "if such statements were ultimately found to be false by this Court, such ruling would effectively impact the decisions and orders made by the state court proceedings," thus implicating the domestic-relations exception. *Id.* at 9. KVC further argues the Seventh Circuit has interpreted the domestic-relations exception broadly, citing *Sheetz v. Norwood*, 608 F. App'x 401, 404 (7th Cir. 2015) (unpublished).

In response, Shophar contends that KVC's assertions that Shophar's claims ask the Court to review issues raised in state court proceedings is unsupported. Pl.'s KVC Resp. at 3. Shophar submits, in conclusory fashion, that his defamation and intentional infliction of emotional distress claims are not "ancillary" to any state court proceeding, such that any doctrine or exception applies to preclude subject-matter jurisdiction. *Id.* at *3.

7

The "domestic-relations exception applies when a litigant asks a federal court to provide one of the unique forms of relief associated with domestic relations (e.g., a decree regarding divorce, alimony, or child custody), or when the issue raised by the litigant in federal court is ancillary to the domestic-relations proceedings in state court." *Sheetz*, 608 F. App'x at 404. "The domestic-relations exception stems from the Supreme Court's long-held understanding that the subject of domestic relations belongs to the laws of the State." *Merritt v. Grady*, 2024 WL 3581915, at *2 (N.D. Ill. July 30, 2024) (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992)). In short, the domestic-relations exception applies to challenges in federal court over state court orders involving the issuance of a divorce, alimony or child custody decree. *Sheetz*, 608 F. App'x at 404. The Seventh Circuit has acknowledged that "[w]here *Rooker-Feldman* does not apply because of a lack of final judgment, other doctrines usually apply to block federal jurisdiction to review such orders" such as "*Younger* abstention or the domestic-relations exception." *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, n.2 (7th Cir. 2023).

Here, the Court finds the domestic-relations exception does not apply based on the SAC. The Court finds *Sheetz* persuasive. In *Sheetz*, a case cited by KVC, the Seventh Circuit held that the domestic-relations exception did not apply to plaintiff's attempt to litigate misconduct occurring *outside* of state-court proceedings, citing Supreme Court precedent for the proposition that plaintiff's "claims are analogous to the tort claims that the Supreme Court has held are not barred by . . . the domestic-relations . . . exception[]." 608 Fed. App'x. at 404. The Seventh Circuit reasoned that the plaintiff in *Sheetz* could "pursue his claims without asking to set aside the state court's orders[.]" *Id.* Similarly, here, the Court finds that Shophar may pursue his tort claims without asking the Court to set aside state court orders. And Shophar has not asked the Court to set aside any state court orders. In short, Shophar is no longer seeking any form of relief associated with domestic relations such as a child custody determination (or nullification of a child custody determination). Although Shophar's claims may relate to the child custody proceedings, as argued by KVC, based upon the SAC, it is unclear whether the alleged misconduct complained-of by Shophar occurred within or outside of the state-court proceedings. Indeed, the SAC sheds little light in what context the alleged defamatory statements were made. In the absence of any allegations in the SAC that the statements were ancillary to a child custody proceeding, the Court cannot say that the domestic-relations exception applies. Therefore, the Court finds the domestic-relations exception does not apply, such as to deprive the Court of subject matter jurisdiction.

One final point. While Shophar has carefully avoided providing any context for the alleged defamatory statements, presumably, to avoid the very arguments advanced by KVC, the Court reminds Shophar that the Court can revisit the issue of subject-matter jurisdiction at anytime and dismiss the case if it determines that it lacks subject-matter jurisdiction.

Before turning to Pathway and KVC's personal jurisdiction arguments, the Court notes that KVC did not make any argument regarding the *Younger* abstention doctrine; therefore, the Court need not address it.

## II. Personal Jurisdiction

Both Pathway and KVC move to dismiss the SAC based on lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

Federal Rule of Civil Procedure 12(b)(2) governs dismissal based on lack of personal jurisdiction. A plaintiff need not include facts alleging personal jurisdiction in the complaint, but once a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing it. *Curry v. Revolutions Labs., LLC*, 949 F.3d 385, 392 (7th Cir. 2020). "The precise nature of the plaintiff's burden depends upon whether an evidentiary hearing has been held." *Id.* at 393 (cleaned up). Where no evidentiary hearing has been held, the plaintiff only needs to make a *prima facie* case for personal jurisdiction. *Id.* Courts may consider any affidavit submitted on the issue of personal jurisdiction, but in evaluating whether plaintiff has met the *prima facie* standard, "the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Id.*

Federal courts in Illinois may exercise personal jurisdiction over non-resident defendants "only if authorized by both Illinois law and the United States Constitution." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). "To that end, the Illinois Long Arm Statute provides that courts may exercise jurisdiction on any basis allowed by the due process provisions of the Illinois and federal constitutions." *Id.* at 705. Put differently, the state statutory and federal constitutional inquiries merge. *Tamburo v. Dworkin*, 601 F. 3d 693, 700 (7th Cir. 2010). The "United States constitutional guarantee of due process of law requires that defendants not present in the forum have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Abelesz v. OTP Bank*, 692 F.3d 638, 653–54 (7th Cir. 2012). "The crucial inquiry is whether the defendant's contacts with the state are such that he should reasonably anticipate being haled into court there." *Int'l Med. Grp., Inc. v. Am. Arb. Ass'n, Inc.*, 312 F.3d 833, 846 (7th Cir. 2002). To do so, the "defendant must have purposefully availed himself of the privilege of conducting activities in the forum state, invoking the benefits and protections of its laws." *Id.* Ultimately, "the question of personal jurisdiction hinges on the defendant's—not the plaintiff's—contacts with the forum state." *North v. Ubiquity, Inc.*, 72 F. 4th 221, 225 (7th Cir. 2023). Personal jurisdiction can be general or specific. *Tamburo*, 601 F.3d at 701. "A defendant with 'continuous and systematic' contacts with a state is subject to general jurisdiction there in any action, even if the action is unrelated to those contacts. The threshold for general jurisdiction is high; the contacts must be sufficiently extensive and

9

pervasive to approximate physical presence." *Id.* (cleaned up). For specific jurisdiction, "the defendant's contacts with the forum state must directly relate to the challenged conduct or transaction." *Id.* at 702.

Beginning with Pathway, it argues that the Court has neither general nor specific personal jurisdiction over it in Illinois. R. 118, Pathway Memo. At 2–6. For general personal jurisdiction, Pathway contends—with supporting affidavits—that it does not have any business in Illinois, no agents or employees in Illinois, and, generally, no systematic or continuous activity that it conducts or purposefully directs to Illinois. *Id.* at 5 (citing R. 118-1, Patrick Aff.). As for specific jurisdiction, Pathway argues that the allegation that "Pathway spoke with Lincoln Grade School in Illinois about Shophar, sending it numerous documents as well" is insufficient, citing the Court's prior finding that then-plaintiffs "seem[ed] to argue, without citation to any authority, that sending documents to Illinois from Kansas and Missouri, or communicating with them as Illinois residents, is a sufficient minimum contact, which the Court rejects." Pathway Memo. at 6. Moreover, Pathway argues it has no records of documents produced by, or conversations between Pathway and a school in Illinois. *Id.* (citing R. 118-2, Dwyer Aff.). Instead, Pathway contends that it was David Letison who allegedly made the statements, and Pathway Learning Center, not Pathway. *See generally* Dwyer Aff.

Similarly, KVC argues—also attaching supporting affidavits—that it has no business in Illinois and cannot be regarded as "at home" here. KVC Memo. at 5; Costabile Aff.; Stucky Aff. Therefore, no general jurisdiction. As for specific personal jurisdiction, that does not exist because KVC "did not purposefully direct any conduct at Illinois that gave rise to the underlying litigation, nor did any of the actionable conduct by the KVC Defendants take place in Illinois." KVC Memo. at 4. Finally, KVC argues that the only connection to the forum is Shophar's residence, which is insufficient to establish personal jurisdiction over the entities. *Id.*

In response, Shophar concedes that the Court does not have general jurisdiction over KVC or Pathway. Rather, argues Shophar, the Court has specific jurisdiction over both. Starting with Pathway, Shophar contends that "Pathway maliciously directed defamatory material about him to various individuals and entities in Illinois, and that Pathway spoke with Lincoln Grade School about Shophar, sending it numerous documents as well, indicating falsely that Shophar had been determined to be physically abusive to his child, injuring Shophar in Illinois, where the tortious conduct occurred." R. 124, Pl.'s Pathway Resp. at 2 (citing cases that tortious acts aimed at a party in Illinois, including defamation, satisfy specific jurisdiction standards, *see Sunny Handicraft (H.K.) Ltd. v. Edwards*, 2017 WL 1049842 (N.D. Ill. March 20, 2017) (citing *Tamburo*, 601 F. 3d at 708)). In *Edwards*, specifically, Shophar contends that allegedly defamatory statements in emails sent to employees based in Illinois satisfied specific jurisdictional standards. Pl.'s Pathway Resp. at 2. Finally, Shophar contends that where reputational injury occurred is a

10

"focal point" for the jurisdictional analysis, and here that is in Illinois. *Id.* at 3. Shophar also attaches an affidavit to support his arguments. R. 124-1, Shophar Aff.

With respect to KVC, Shophar makes the same arguments, and argues that numerous false statements—many more than Pathway—were sent to specific individuals in Illinois, and that even a false statement was published in a Cook County newspaper. Pl.'s KVC Resp. at 4.

Here, as there is no argument that Pathway or KVC is subject to general jurisdiction in Illinois, the inquiry is whether the Court has specific jurisdiction over Pathway and KVC.

In its prior Order, the Court rejected the then-plaintiffs argument, bereft of any authority, that sending documents to Illinois from Kansas and Missouri, or communicating with them as Illinois residents, is a sufficient minimum contact," 3/24/2023 Order at 14. Now, the SAC now includes specific allegations that "between 2019 to the present, Defendants maliciously directed defamatory material about Shophar to various individuals and entities in Illinois" including to Lincoln Elementary School, Bradley Boucher, Dr. Jack Joseph, the Cook County court, Shophar himself, his attorneys, and an Illinois newspaper. SAC ¶¶ 9–10. Moreover, Shophar has included the substance of the communications and/or statements. *Id.* ¶¶ 18, 25–26. Further, Shophar has now included authority on specific jurisdiction to support his claims against Pathway and KVC. Pl.'s Pathway Resp. at 2–4.

Starting with KVC, the Court finds based on the allegations in the SAC, that the Court has specific jurisdiction over KVC. Although KVC submits affidavits disputing general jurisdiction, it does not dispute specific jurisdiction except to argue that Shophar's citizenship is the only connection to Illinois. KVC Memo. at 4. KVC however, ignores the allegations of the numerous alleged defamatory statements KVC made to a school in Illinois, and published in an Illinois newspaper, as detailed in his SAC. The Court finds the specific jurisdictional requirements satisfied, namely, allegations that (1) defamatory statements, (2) were expressly aimed at Illinois, and (3) Shophar was injured in Illinois. Further, the Court finds that exercising jurisdiction over KVC comports with traditional notions of fair play and substantial justice.

As for Pathway, it is a much closer call. Pathway essentially argues that Shophar has named the wrong entity, and that it did not—and its agents did not—send any communications to Illinois. Pathway submits an affidavit to demonstrate that it is not the entity involved in the alleged defamation. *See generally* Dwyer Aff. Pathway also points to previous emails and documents submitted to the Court by Shophar in response to Pathway's previous motion to dismiss as evidence that schoolteacher David Letison is not a Pathway employee. R. 131, Pathway Reply at 2–3. However, in his affidavit, Shophar details several communications between

11

Pathway and an Illinois public school, and phone calls where allegedly defamatory statements were made to Shophar in Illinois. *See generally* Shophar Aff. Further, in the SAC, Shophar references Pathway generally, and does not identify David Letison, the individual suggested by Pathway in its Affidavit and in its reply as the person making the statements. SAC ¶¶ 17–18. While a close call, the Court finds at this stage Shophar has done enough to make a *prima facie* case for personal jurisdiction over Pathway, especially since Pathway, in Reply, does not challenge the allegations from Shophar's affidavit through another affidavit. *See, e.g.*, *Sunny Handicraft*, 2017 WL 1049842, at *7 (finding personal jurisdiction over defendant who "directed her e-mails deliberately and specifically at Illinois by sending personal messages to her Illinois-based business contacts at Walgreens."). On this basis, the Court finds the specific jurisdictional requirements satisfied, namely, allegations that (1) defamatory statements, (2) were expressly aimed at Illinois, and (3) Shophar was injured in Illinois. Further, the Court finds that exercising jurisdiction over Pathway comports with traditional notions of fair play and substantial justice.

Finding that the Court has personal jurisdiction over Pathway and KVC, the Court now turns to venue.

### III. Venue

Both Pathway and KVC move to dismiss the SAC based on improper venue under Federal Rule of Civil Procedure 12(b)(3).

Rule12(b)(3) allows for dismissal for improper venue. Rule 12(b)(3) is a somewhat unique context of dismissal in that a court may look beyond the mere allegations of the complaint as the exclusive basis for its decision. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016).

28 U.S.C. §1391(b) governs venue. That statute provides that, a civil action may be brought in any of the following venues: (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. 28 U.S.C. §1391(b)(1)–(3).

Pathway argues that Shophar selected an improper forum because Pathway is not a resident of Illinois, and because it is not subject to personal jurisdiction in Illinois. Pathway Memo. at 6–7. KVC asserts the same argument and adds that Illinois is not a situs of a "substantial part of the events or omissions giving rise to

12

the claim occurred" as those actions and/or omissions occurred during the CINC proceedings in Kansas. KVC Memo. at 5–6.

Shophar responds that a substantial part of the events giving rise to his claim occurred in this judicial district, e.g. the defamation occurred here. Pl.'s Pathway Resp. at 6; Pl.'s KVC Resp. at 5.

Here, accepting the well-pled allegations as true, Shophar complains of conduct (defamation) in this judicial district for his claims. Accordingly, the Court finds venue is proper in this judicial district. Pathway and KVC's arguments on venue are nothing more than personal jurisdiction arguments masquerading as a venue challenge. The Court, for the reasons previously discussed, has determined that it has personal jurisdiction over Pathway and KVC, and Pathway and KVC's arguments on venue are also unavailing.

### IV. Failure to state a claim

Alternatively, Pathway and KVC seek dismissal under Federal Rule of Civil Procedure 12(b)(6) because Shophar's claims are time-barred, and do not relate back to the FAC, fail to state claims as a matter of law, and the alleged defamatory statements were privileged. The Court address each argument in turn.

#### a. Statute of Limitations

First, Pathway argues that the claims set forth in Counts I and II are time-barred. Pathway notes that under Illinois law, a defamation cause of action must be filed within one year after the cause of action accrued. Pathway Memo. at 11 (citing 735 ILCS 5/13-201). Shophar's defamation claim, according to Pathway, stems from documents sent to an Illinois school and conversations had in February 2022. This conduct, points out Pathway, occurred more than one-year ago, therefore, the claims are barred. *Id.* In anticipating Shophar's response, Pathway posits that the defamation claim does not relate back to the filing of the FAC as it relates to a different time and subject-matter that was not previously alleged. *Id.* at 7–11.

KVC also argues that the claims against it are time-barred. KVC Memo. at 10–11. Specifically, Shophar pleads that KVC's allegedly defamatory statements were made from September 19 to December 2021, which is outside of the one-year statute of limitations timeframe. *Id.* at 10. KVC contends that the statute of limitation begins to run when the communication is first published and is not started by subsequent distributions, citing *Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087 (N.D. Ill. 2016). *Id.* KVC also makes an argument, without citation to any authority, that the defamatory statements in the SAC were not alleged in the Amended Complaint, and are therefore new claims. KVC Memo. at 11.

13

Shophar insists that his claims are not time-barred due to the relation back doctrine. Specifically, Shophar counters that his first amended pleading included allegations that "Defendants since 2015 through 2022 have made knowingly false reports that Plaintiff Shophar abused his children . . . Defendants continue to make false allegations in reports, in public records, in pleadings, to participates in the State of Illinois, Missouri outside of the court proceedings, to maliciously defame and tarnish the reputation of Plaintiff Shophar for the purpose to deprive him access to his children." Pl.'s Pathway Resp. at 6–7 (citing R. 48, FAC at p. 65–66). Shophar also identifies several sections of his first amended pleading, and request for relief of $1,000,000 from Pathway for defamation. *Id.* (citing FAC at p. 69). Shophar maintains that the SAC includes amplifications of the prior claims, which is permitted, and which relate back to his prior amended pleading. Pl.'s Pathway Resp. at 7.

It is undisputed that the statute of limitations for a defamation claim in Illinois is one year. 735 ILCS 5/13-201. Thus, at first blush it would appear that Shophar's clams are time-barred. Failure to file a complaint within the statute of limitations is an affirmative defense. Fed. R. Civ. P. 8(c). Generally, "complaints do not have to anticipate affirmative defenses to survive a motion to dismiss." *United States v. Lewis*, 411 F. 3d 838, 842 (7th Cir. 2005). There is, however, an exception, "where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when the complaint plainly reveals that an action is untimely under the governing statute of limitations." *Id.* Thus, dismissal is appropriate "[w]hen the plaintiff effectively pleads himself out of court by alleging facts sufficient to establish a statute of limitations defense." *Hollander v. Brown*, 457 F.3d 688, 691, n.1 (7th Cir. 2006). The statute of limitations on a defamation count in Illinois generally begins to run on the date of publication of the allegedly defamatory material. *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 435 (7th Cir. 2009). Generally, Illinois does not recognize the continuing tort theory when a series of discrete acts is involved. *Id.* (finding continuing tort theory did not apply to defamation claim where alleged defamation by consumer reporting agencies constituted separate, discrete acts).

Federal Rule of Civil Procedure 15(c) governs relation back to prior pleadings. That Rule provides that an amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" *Id.* The Rule further provides that an amendment relates back when the party "received such notice of the action that it will not be prejudiced[.]" *Id.* Thus, to avoid dismissal, the SAC must relate back to the first amended pleading. Pathway and KVC argue that Shophar fails to meet the notice requirements of Rule 15(c)(1).

14

Here, in the first amended pleading, Shophar included "TORT CLAIMS/DEFAMATION OF CHARACTER" and included allegations as to "Defendants" generally. Am. Compl. p. 65. This included an allegation of false reports that Shophar abused his children, which is an allegation repeated in the SAC as to Pathway and to KVC. *Id.*; SAC ¶¶ 18, 25. Thus, construing pleadings liberally, and acknowledging that Shophar was *pro se* prior to retaining current counsel, the Court finds the SAC allegations as to Pathway and KVC do relate back to the prior pleading. Meaning that Pathway and KVC had notice based on the FAC as required by Rule 15(c). Further, Pathway had notice of the defamation allegations based on the first amended pleading filed in June 2022, thus the defamation allegation for "during or around February 2022" (within a matter of months of June 2022) is not time-barred. *Id.*

Turning to KVC, Shophar pleads that the allegedly defamatory statements were made over a period from September 2019 to December 2021, without identifying which statement was made when. SAC ¶ 25. As Shophar's FAC was filed in June 2022, it is conceivable that at least some of the allegedly defamatory statements attributed to KVC are timely, as pled. That is, those statements made on or after June 2021. Any alleged defamatory statements made prior to June 2021, however, are likely barred by the one-year statute of limitations.[5]

### b. Failure to State a Claim for Defamation *Per Se*, Defamation *Per Quod*, and Intentional Infliction of Emotional Distress

The Court next turns to Pathway and KVC's motion to dismiss under Rule 12(b)(6) that Shophar has failed to plausibly plead a defamation *per se*, defamation *per quod*, or intentional infliction of emotional distress claim.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d at 820. Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[5] Shophar argues that the discovery rule applies because the "claims were hidden from Shophar and not discoverable until 2022." Pl.'s KVC Resp. at 5, citing *Peal v. Lee*, 933 N.E.2d 450, 461 (Ill. App. Ct. 2010). However, in *Peal*, the court acknowledged "there exists a degree of uncertainty as to when the discovery rule should apply in defamation cases, this court has acknowledged its use and stated that it should not be applied 'unless the publication was hidden, inherently undiscoverable, or inherently unknowable.'" Under that theory, it is possible earlier statements may be actionable.

15

misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### i. Defamation *Per Se*

Beginning with the counts of defamation *per se*, Pathway argues that Shophar has failed to: allege how or why the claimed defamatory statement is false; allege sufficient facts surrounding the publication of the statement; and the "abstract, vague, and context-free" allegation fails to provide sufficient notice to Pathway. Pathway Memo. at 11 (citing *McGreal v. AT&T Corp.* 892 F. Supp. 2d 996, 1016 (N.D. Ill. 2012)).

Similarly, KVC argues that the statements attributed to it are not defamatory *per se*, as they do not fall within any recognizable category, that they lack particularity for when and who made each statement, and in what context. KVC Memo. at 11–12.

Shophar responds that he is not required to allege facts showing how or why certain statements are false. Pl.'s Pathway Resp. at 8. He also defends the statements as having context in that, for Pathway, they occurred within a document and on a call, and identified the time the statements were made. *Id.* at 9. As to KVC, Shophar contends that his allegations include statements of kidnapping and attempted kidnapping, domestic violence, physical abuse, having a criminal record, all of which demonstrate a defamation *per se* claim. Pl.'s KVC Resp. at 6.

To state a claim for defamation *per se*, a plaintiff must plead: (1) the defendant made a false statement concerning the plaintiff; (2) there was an unprivileged publication of the defamatory statement to a third party by defendant; and (3) publication of the defamatory statement damaged the plaintiff. *Brennan v. Kadner*, 814 N.E.2d 951, 956–57 (Ill. App. Ct. 2004). Illinois recognizes five categories of statements that are defamatory *per se*: (1) those imputing the commission of a criminal offense; (2) those imputing infection with a loathsome communicable disease; (3) those imputing an inability to perform or want of integrity in the discharge of duties of office or employment; (4) those that prejudice a party or impute lack of ability in the party's trade, profession or business; and (5) those imputing adultery or fornication. *Id*. at 957.

Here, although the Court agrees that the statements lack context, certain statements appear on their face to be defamatory, e.g. that Shophar physically abused his children and/or wife. Further still, the statement against Pathway includes the when (February 2022), how (spoke with and sent documents), and to whom (Lincoln Grade School in Illinois), which context was missing in the *McGreal v. AT&T* case.

16

SAC ¶ 18. As to KVC, the many alleged statements are described as being sent in a certain period (September 2019 to December 2021) and to whom (Michelle Campos, Dr. Joseph, and Shophar and his counsel). *Id.* ¶ 25. True, Shophar does not include the method of communication for the many statements attributed to KVC in Paragraph 25 of his SAC. *Id.* However, Shophar also alleges that in September 2022, KVC caused an alleged false statement to be published in a Cook County, Illinois newspaper. *Id.* ¶ 26.

The Court notes that on their face, certain statements are not defamatory *per se*. For example, that Shophar had sent extremely erratic emails, or that he is uncooperative, do not fall within any recognized category for defamation *per se*. SAC ¶ 25. However, other statements, for example that Shophar is abusive (which conceivably imputes the commission of a criminal offense), do fall within a recognized category for defamation *per se*. *Id.* Nevertheless, as to KVC, the Court is not ruling on each individual statement as they are pled as one count of defamation, and not discrete counts of defamation.

### ii. Defamation *Per Quod*

Turning next to Shophar's defamation *per quod* counts, Pathway and KVC both argue that Shophar has failed to plead special damages, as required to state a claim for defamation *per quod*. Pathway Memo. at 14–15; KVC Memo. at 14–15.

Shophar counters that he has alleged the false statements have prejudiced him as a minister, and that he has suffered financially with respect to his business because of the publication of Pathway's false statements, which is sufficient for a defamation *per quod* claim. Pl.'s Pathway Resp. at 9; Pl.'s KVC Resp. at 6.

Statements are defamatory *per quod* (1) where the defamatory character of the statement is not apparent on its face and resort to extrinsic circumstances is necessary to demonstrate its injurious meaning; and (2) where the statement is defamatory on its face, but does not fall within one of the limited categories of statements that are actionable *per se*. *Thomas v. Fuerst*, 803 N.E.2d 619, 624 (Ill. App. Ct. 2004). A claim for defamation *per quod* requires the plaintiff to allege both extrinsic facts to establish that the statement is defamatory and special damages with particularity. *Dubinsky v. United Airlines Master Exec. Council*, 708 N.E.2d 441, 447 (Ill. App. Ct. 1999). That is, a plaintiff must plead special damages and comply with the heightened pleading standard of Federal Rule of Civil Procedure 9(g) which requires special damages be specifically stated. *Muzikwoski v. Paramount Pictures Corp.*, 322 F.3d 918, 927 (7th Cir. 2003).

Here, viewing the allegations of the SAC in the light most favorable to Shophar, the non-movant, and drawing all reasonable inferences in his favor, the Court finds that Shophar has failed to plead special damages. Notably, Shophar in

17

response did not point the Court to any allegation of special damages in his SAC. Instead, he cites to case law, which is inapposite. No matter, as the SAC only contains general allegations of damages, which does not suffice. Therefore, the Court dismisses Shophar's defamation *per quod* claims without prejudice.

### iii. Intentional Infliction of Emotional Distress

Finally, the Court addresses Shophar's intentional infliction of emotional distress (IIED) claim pled as to KVC only.[6] KVC moves to dismiss this count for failure to state a claim.

To plead an IIED claim, Shophar must allege: (1) extreme and outrageous conduct; (2) KVC's intent that the conduct inflict severe emotional distress, or knowledge that there is a high probability that the conduct will cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress. *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003).[7] Extreme and outrageous conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Banks v. Dart*, 2023 WL 6388063, at *6 (N.D. Ill. Sept. 29, 2023).

Here, KVC argues that Shophar fails to plausibly allege that its conduct was extreme and outrageous. KVC Memo. at 18–19. Put another way, KVC does not argue that Shophar fails to plausibly allege intent or that its conduct caused severe emotional distress. Therefore, the Court limits its review to the first element of an IIED claim. Shophar, in response, insists that KVC engaged in a years-long pattern of extreme and outrageous misconduct directed toward him, resulting in extreme emotional distress. Pl.'s KVC Resp. at 7.

In the SAC, Shophar alleges that agents of KVC made statements that Shophar's children have PTSD due to him kidnapping them, and that Shophar committed domestic violence against the children and their mother, that Shophar has physically abused his children, causing them trauma, and that Shophar has a criminal record, among many other alleged defamatory statements. SAC ¶ 25.

---

[6] Shophar also includes an IIED claim as to Defendant Richard Klein, who has not appeared in this case.

[7] In its memorandum, without explanation, KVC cites to both Kansas and Illinois law on IIED. KVC Memo. at 17–18. Shophar, on the other hand, cites to Illinois law on IIED. As the basis of the IIED claim is allegedly defamatory statements sent to Illinois, and KVC has not alleged any choice of law issue, the Court applies Illinois law as the law of the forum state. *Bd. of Forensic Doc. Examiners, Inc. v. ABA*, 922 F.3d 827, 831 (7th Cir. 2019) (finding district court committed no error in applying Illinois law where plaintiff "did not identify any specific conflict in the laws of the pertinent states.").

The Court, accepting the well-pled allegations as true as the Court must, and drawing all reasonable inferences in favor of Shophar, finds that Shophar has sufficiently pled allegations to support that KVC's conduct was extreme and outrageous, as required to plausibly state an IIED claim, and the Court denies the Motion on that basis.

### c. Privilege/Immunity

Lastly, KVC posits that "[e]ven if the Court finds that the KVC Defendants' alleged statements are defamatory *per se* or amount to defamation *per quod*, such defamatory statements are not actionable because such statements are subject to immunity." KVC Memo. at 15. Put differently, if the Court finds the statements are defamatory, then a privilege, or immunity, applies. *See id.* KVC further contends that "the purported statements published by the KVC Defendants all stem from the state CINC proceedings involving plaintiff's minor children" and are thus protected by immunity. *Id.* at 17.

Pathway does not make any privilege or immunity arguments.

Shophar counters that KVC is improperly asserting an affirmative defense, which is not proper on a Rule 12(b)(6) motion. Pl.'s KVC Resp. at 7–8. Shophar also posits that KVC "appear[s] to be arguing litigation privilege, even though none of the false statements as alleged was made as part of ligation [sic], and the KVC Defendants supply no support to the contrary." *Id.* at 8. In any event, even if a privilege applies, Shophar argues that "whether the privilege was abused is a question of fact for the jury," citing *Kuwik v. Starmark Star Mktg. & Admin., Inc.*, 619 N.E.2d 129, 133 (Ill. 1993). *Id.*

Under Illinois law, "[a] privileged communication is one which, except for the occasion on which or the circumstances under which is made, might be defamatory and actionable." *Kuwik*, 619 N.E.2d at 133 (cleaned up). The elements of qualified privilege are: "(1) good faith by the defendant making the statement; (2) an interest or duty to uphold; (3) a statement limited in its scope to that purpose; (4) a proper occasion; and (5) publication in a proper manner and to proper parties only." *Id.* An absolute or qualified privilege is an affirmative defense, not an element of a defamation claim. *Kainrath v. Grider*, 115 N.E.3d 1224, 1233 (Ill. App. Ct. 2018). "A court may dismiss a claim based upon an affirmative defense, however, if the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Rosas v. Bd. of Educ. of City of Chicago*, 652 F. Supp. 3d 951, 967 (N.D. Ill. 2023) (cleaned up). The issue before the Court is whether Shophar pled himself out of court by alleging and thus admitting the ingredients of the affirmative defense. *U.S. Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003).

19

The Court agrees with Shophar that KVC's privilege argument is an affirmative defense. However, the SAC does not set forth everything the Court would need to consider to find an absolute or qualified privilege applies. That is, Shophar has not pled himself out of court by alleging and thus admitting the ingredients of the affirmative defense. Not only that, but the Court finds KVC's argument undeveloped. Notably, although KVC cites case law for general propositions on privilege, KVC does not cite to any case law in support of this argument that statements from CINC proceedings would be privileged. Therefore, the Court denies KVC's motion to the extent it argues a privilege or immunity[8].

## CONCLUSION

To summarize the Court's ruling, Pathway and KVC's motion to dismiss is denied in part and granted in part. The Court finds Shophar may proceed on his claims for defamation *per se* against Pathway (Count I), and his claims for defamation *per se* and intentional infliction of emotional distress against KVC (Counts III and VII). The defamation *per quod* claims are dismissed without prejudice. (Counts II and IV).

The Court also notes, for the record, that Defendant Richard Klein has not appeared in the case to date, and his claims were not the subject of any pending motion. (Counts V, VI, VIII).

The Court will refer this matter to Magistrate Judge Appenteng for discovery supervision. The Answers to the SAC are due by September 10, 2024.

DATE: August 27, 2024

Franklin U. Valderrama
United States District Judge

---

[8] Without prejudging the issues on summary judgment, it strikes the Court that if the alleged statements were made during child custody proceedings, or in effectuating the outcomes of those proceedings, they will likely be protected by a privilege. The Court reminds Plaintiff's counsel of his obligations under Rule 11, which requires that in all representations to the Court, any filing with legal contentions must be warranted by existing law or by a nonfrivolous argument, and the factual contentions made will likely have evidentiary support after a reasonable opportunity for investigation.

20