IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOREL SHOPHAR, ) | |
| ) | Case No. 22-cv-2333 |
| Plaintiff, ) | |
| v. ) | District Judge Franklin U. Valderrama |
| ) | |
| PATHWAY FAMILY SERVS., ) | Magistrate Judge Jeannice W. Appenteng |
| LLC, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are two third-party motions to quash plaintiff's subpoenas, Dkts. 250, 262. For the reasons below, the motions to quash are granted.

**I.  Background**

Plaintiff Jorel Shophar sued Pathway Family Services (a psychiatric treatment facility) and KVC entities (foster care providers), alleging defendants are liable for defamation and intentional infliction of emotional distress. Dkt. 112. Plaintiff alleges defendants "maliciously directed defamatory material about [plaintiff] to various individuals and entities in Illinois." *Id.* at 2. The alleged defamatory statements include various reports about plaintiff's behavior toward his minor children and their mother, including reports that he abused them or engaged in other criminal activity. *Id.* at 5-8. Defendants deny the allegations. Dkts. 150, 151. This litigation is one of many that stem from defendants' alleged conduct related to child custody proceedings that began in Kansas. Dkt. 105 at 2 (taking judicial notice of plaintiff's related lawsuits).

Discovery began in November 2024. Plaintiff, now proceeding pro se, has issued numerous subpoenas. The pending motions involve plaintiff's subpoena requests to Lee's Summit R-VII School District ("the District"), a school district in Missouri, and Cornerstones of Care ("Cornerstones"), a nonprofit organization providing behavioral and mental health services in Missouri. The District and Cornerstones are third parties, and they are not identified in plaintiff's operative complaint as entities that sent or received allegedly defamatory statements. *See* Dkt. 112 at 2. The District and Cornerstones moved to quash their respective subpoenas, Dkts. 250, 262. Plaintiff filed responses, Dkts. 256, 265. And the District filed a reply, Dkt. 261.

## II.   Legal Standard

Rule 45 of the Federal Rules of Civil Procedure governs issuing and quashing a subpoena. "The scope of information that can be sought through a subpoena is 'as broad as what is otherwise permitted under Rule 26(b)(1).'" *Friend v. FGF Brands (USA), Inc.*, No. 18 C 7644, 2020 WL 13886016, at *1 (N.D. Ill. June 2, 2020) (quoting *Fulton v. Foley*, No. 17-CV-8696, 2019 WL 6609298 (N.D. Ill. Dec. 5, 2019)). In other words, a subpoena can request "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevance is the initial inquiry under Rule 26 and "focuses on the claims and defenses in the case, not its general subject matter." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019).

Upon a timely motion, the Court must quash or modify a subpoena if it "subjects a person to undue burden" or "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii-iv). "Non-party status 'is a significant factor' to be considered" when the subpoena recipient argues undue burden. *Tresona Multimedia, LLC v. Legg*, No. 15 C 4834, 2015 WL 4911093, at *2 (N.D. Ill. Aug. 17, 2015). The Court may also quash or modify a subpoena if it requests discovery that is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient." *Id.* at *3 (quoting Fed. R. Civ. P. 26(b)(2)). The Court has broad discretion to resolve motions to quash. *Griffin v. Foley*, 542 F.3d 209, 223 (7th Cir. 2008).

### III. Analysis

#### A. Scope of Relevancy

Before evaluating the discovery requests at issue, the Court must establish the bounds of relevance. Discovery is not unlimited and "relevancy is perhaps the most important of [the] limits" imposed by the federal discovery rules. *Ossola v. Am. Express Co.*, No. 13 C 4836, 2015 WL 5158712, at *4 (N.D. Ill. Sept. 3, 2015). Relevance focuses on the claims set forth in a case. Plaintiff's operative complaint states (1) a defamation per se claim against defendant Pathways and the KVC defendants, and (2) an intentional infliction of emotional distress claim against the KVC defendants. *See* Dkt. 112 (Second Amended Complaint); Dkt. 143 (Order dismissing certain claims); Dkt. 225 (Order dismissing another defendant).

To prove defamation per se, plaintiff must establish that defendants "made a false statement concerning [the plaintiff], [and] that there was an unprivileged publication to a third party with fault by the defendant, which caused damage to the plaintiff." *McGreal v. AT&T Corp.*, 892 F. Supp. 2d 996, 1016 (N.D. Ill. 2012) (quoting *Krasinski v. United Parcel Serv., Inc.*, 124 Ill.2d 483 (1998)). With respect to defendant Pathways, plaintiff alleges that in or around February 2022, Pathways spoke with Lincoln Grade School and sent the school documents, falsely claiming plaintiff abused his children. Dkt. 112 at 3-4. With respect to the KVC defendants, plaintiff alleges that from September 2019 to December 2021, KVC communicated false statements to Michelle Campos, Dr. Joseph, and plaintiff's former counsel, and that KVC caused a false statement to be published in a Cook County newspaper. *Id.* at 5-6. Plaintiff attributes several statements to KVC in his complaint, but as the District Judge explained, his claim for defamation per se must focus on the statements that plaintiff abused his children and their mother, or that he engaged in other criminal behavior. Dkt. 143 at 17 (explaining many of the other alleged statements do not fall within a recognized category for defamation). Plaintiff alleges defendants knew the statements at issue were false, and that their publication to third parties has hurt him financially and emotionally.

To prove the KVC defendants intentionally inflicted emotional distress, plaintiff must establish that the defendants' conduct was extreme and outrageous, that defendants intended to cause emotional distress or knew there was a high probability that their conduct would do so, and that defendants' conduct in fact

4

caused severe emotional distress. *Herrera v. Di Meo Bros., Inc.*, 529 F. Supp. 3d 819, 830 (N.D. Ill. 2021). Plaintiff alleges the KVC defendants' extreme and outrageous conduct was the publication of statements that he abused his family, traumatized his children, and that he has a criminal record. He further alleges the KVC defendants intended to, or recklessly disregarded the possibility that their conduct could, cause him emotional distress, and that he did suffer emotional distress. Dkt. 112 at 8-9.

Given plaintiff's claims and allegations at this stage in the case, the Court limits discovery to: (1) whether defendants told the third parties identified in the complaint that plaintiff abused his family or engaged in other criminal behavior, and whether those statements were false; (2) whether defendants made the statements with the requisite fault or knowledge; and (3) whether, and to what extent, plaintiff was harmed by defendants' conduct. The Court understands plaintiff's allegations fall against a backdrop of custody proceedings and other litigation aimed at challenging the actions taken by state actors, officials, child welfare agencies, and other individuals involved in the custody cases. But this lawsuit has been limited to the defamation and intentional infliction of emotional distress claims in plaintiff's operative complaint, and discovery shall be limited to those claims as well. *See* Dkt. 105 (dismissing claims about custody and state court decisions); Dkt. 143 (narrowing the claims further). With this scope in mind, the Court will address the third-party motions in turn.

5

B.     **The District's Motion to Quash**

Plaintiff issued a subpoena to the District, requesting "all school records, assessments, emails, faxes and documents" regarding his minor children; "all documents sent or received" regarding plaintiff and Krissy Gorski (the children's mother); and "all communication with US-46 School District and Lincoln Elementary School in Illinois." Dkt. 250-1. Plaintiff's children were students within the District at some point, but neither plaintiff nor the District identifies the relevant time period. The District argues the subpoena should be quashed because (1) the Family Educational Rights and Privacy Act of 1974 ("FERPA") prohibits production of responsive documents, and (2) the subpoena is overbroad and unduly burdensome. The Court agrees the subpoena is improper.

First, the Court finds the subpoena requests are overly broad and not reasonably tailored to discover relevant information. The requests as written are facially overbroad because they contain no temporal limits and indiscriminately seek any and all records concerning plaintiff, Ms. Gorski, and the children. *See Craigville Tel. Co. v. T-Mobile USA, Inc.*, No. 19 CV 7190, 2022 WL 1499908, at *1 (N.D. Ill. May 12, 2022) (requests for "all documents" and "all communications" are impermissibly overbroad). Moreover, plaintiff fails to explain how the requested documents are relevant to defendants' alleged publication of defamatory statements or his damages. Notably, the District is not alleged to have sent or received any of the defamatory statements at issue. Plaintiff's brief primarily recounts his extensive custody dispute with Ms. Gorski and challenges the allegedly "nefarious"

parental-rights order the District attached to its motion. Dkt. 256 at 1-12. But the validity of the District's exhibits and the details of plaintiff's custody dispute are beside the point. The record here suggests that plaintiff's children were enrolled in the District at some point during plaintiff's custody dispute, and possibly at the same time as defendants' alleged conduct. However, these facts, without more, do not make the District's records relevant and discoverable.

Second, the Court finds the subpoena should be quashed considering the Family Educational Rights and Privacy Act, which protects "records, files, documents, and other materials which contain information related directly to a student" and are maintained by an educational institution. 20 U.S.C. § 1232g(a)(4)(A). Although FERPA allows production of student records in response to a subpoena, "the party seeking the records must meet the 'significantly heavy burden' of 'showing that the interest in obtaining the records outweighs the privacy interest of the student.'" *Johnson v. Guevara*, No. 20 C 4156, 2021 WL 12298819, at *2 (N.D. Ill. Aug. 2, 2021) (quoting *McDaniel v. Loyola Univ. Med. Ctr.*, No. 13 CV 6500, 2015 WL 13901029, at *2 (N.D. Ill. Apr. 28, 2015)); *see also* 20 U.S.C. § 1232g(b)(2)(B) (allowing educational institutions to disclose records to comply with a subpoena if the institution makes a reasonable effort to notify the parent or student in advance of compliance, which the District did here). When weighing the discovery interest against privacy interests, the Court focuses on the relevance of the records at issue. *Johnson*, 2021 WL 12298819, at *2. As discussed above, the Court finds that on this record, plaintiff has not established that the requested

7

records from the District are relevant. Although the Court construes plaintiff's pro se brief liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), plaintiff has not satisfied the "heavy burden" required to override the children's privacy interests. *Johnson*, 2021 WL 12298819, at *3 (quashing part of subpoena that sought irrelevant student records).

For the foregoing reasons, the District's motion to quash is granted.

### C.     Cornerstones' Motion to Quash

Plaintiff seeks[1] all documents that name or reference plaintiff and were created by a Cornerstones representative between 2016 and 2022. Dkt. 265 at 7-8. Although plaintiff and Cornerstones, a behavioral and mental health organization, disagree about the scope of Cornerstones' contact with plaintiff and his family, they agree that Cornerstones provided some services to plaintiff's children.[2] Cornerstones argues, among other things, the subpoena is overbroad and seeks irrelevant information including "records regarding patients other than plaintiff" and "psychotherapy notes, intake records, scheduling and billing data, internal staff communications, and communications with third parties." Dkt. 262 at 5, 8.

---

[1] Plaintiff's request as stated in his brief reflects an attempt to narrow the subpoena, which originally requested (1) "all emails, fax, and mail of all documents, files" regarding plaintiff, his children, and Krissy Gorski; and (2) "all files, emails, mail, and faxes sent or received from individuals or agencies to or from: Illinois, Michigan, Missouri, Colorado, Texas, Violence Against Women Act, Medicaid, Medicare" regarding the same individuals. Dkt. 262-1.

[2] If plaintiff is himself a patient of Cornerstones, the Court assumes he may, outside of the discovery process, make a request for *his* health records in accordance with Cornerstones' policies. But any issues that may arise from such a request are not for the Court to resolve because it is outside the scope of this litigation.

As noted above, the Court's analysis begins with relevance. Plaintiff fails to provide any explanation as to how *all* (or any) of Cornerstones' documents that reference plaintiff are relevant to (1) whether *defendants* stated plaintiff abused his family or engaged in other criminal behavior; (2) whether those statements were false; or (3) whether, and to what extent, plaintiff was harmed by defendants' alleged conduct. Plaintiff, instead, insists Cornerstones has "a connection with the [d]efendants in the action," but he does not elaborate or otherwise describe the alleged relationship. Dkt. 265 at 9. The fact that Cornerstones and defendants both provided services to plaintiff's family during a multi-year custody dispute does not itself suggest Cornerstones' documents are relevant here. Plaintiff accuses Cornerstones of engaging in conduct similar to the allegations against defendants, writing in his response that Cornerstones "reported false information," "falsely documented claims" and "defamed" him by submitting documents to Illinois schools. *Id.* at 4-6. But the exhibits plaintiff cites do not support these assertions and plaintiff does not point to anything—in the record or otherwise—to suggest evidence of such alleged conduct is in the documents he seeks. Moreover, Cornerstones is no longer a defendant in this case. Plaintiff agreed to dismiss it from this lawsuit over two years ago. Dkt. 128. For all these reasons, plaintiff fails to establish relevance for the documents he seeks. Cornerstones' motion to quash is granted.

## CONCLUSION

For the foregoing reasons, the District's motion to quash, Dkt. 250, and Cornerstones' motion to quash, Dkt. 262, are granted.

**So Ordered.**

_____
**Jeannice W. Appenteng
United States Magistrate Judge**